**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| TODD STATHUM, SR., | |
| Plaintiff, | Civil Action No. 15-5502 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| BARRY NADROWSKI, et al., | |
| Defendants. | |

Plaintiff Todd Stathum, Sr. brings this action against Defendants pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights based on the denial of religious meals. The Court previously directed the Clerk to enter a Clerk's default against Defendants due to their failure to file a timely response after service of process. (Order, June 23, 2016, ECF No. 22.) Presently before the Court are Defendants' Motion to Dismiss ("MTD") (ECF No. 21), and Motion to Set Aside Default (ECF No. 23). Also before the Court is Plaintiff's Motion for Default Judgment. (ECF No. 25.) For the reasons stated below, (1) Defendants' MTD is granted in part, and denied in part; (2) Defendants' Motion to Set Aside Default is granted; and (3) Plaintiff's Motion for Default Judgment is denied.

### I.  FACTUAL BACKGROUND

For the purposes of this Opinion, the Court accepts all facts alleged in the Complaint as true, and in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to

relief."). Plaintiff is a prisoner at the Monmouth County Correctional Institution in Freehold, New Jersey. (Compl. 3, ECF No. 1.) Plaintiff alleges that he is a Muslim, and that for a period of twelve months prior to May 16, 2015, he was denied Halal meals required by his religious beliefs. (*Id.* at 6.) Plaintiff additionally alleges that Defendants served Kosher meals to inmates of the Jewish faith. (*Id.*) Plaintiff, therefore, requested Kosher meals, which he alleges would substantially comply with his religious practices. (*Id.*) Plaintiff further alleges that Defendants refused to give him Kosher meals and told him that Muslim inmates must eat "whatever is served or become vegetarians." (*Id.*) Finally, Plaintiff alleges that Jewish inmates were not forced to become vegetarians. (*Id.*) Plaintiff seeks injunctive and monetary relief. (*Id.*)

## II.   STANDARD OF REVIEW

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure. Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). On a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

2

In determining the sufficiency of a *pro se* complaint, the Court must be mindful to accept its factual allegations as true, *see James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

### III. DISCUSSION

#### A. Default Judgment

The Court first addresses Defendants' Motion to Set Aside Default, and Plaintiff's corresponding Motion for Default Judgment. Motions to enter default judgment and vacate default are both governed by Federal Rule of Civil Procedure 55. *See* Fed. R. Civ. P. 55(a), (c). Rule 55(c) provides that "[t]he [C]ourt may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The decision to vacate a default is left to the sound discretion of the district court. When deciding whether to vacate default, the court must consider three factors: "(1) [w]hether the plaintiff will be prejudiced [if the default is lifted]; (2) [w]hether the defendant has a meritorious defense; and (3) [w]hether culpable conduct of the defendant led to the default." *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982); *see also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984). "There is a distinction between a default standing alone and a default judgment . . . . Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Feliciano*, 691 F.2d at 656. Where there is a close case, the Third Circuit has instructed that "doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)).

Defendants' primary defense against default judgment is that they were not properly served with the Complaint and summons. The record, however, shows that service upon Defendants was

effectuated by the United States Marshal, and proofs of service were filed by the Marshal on August 24, 2015. (*See* ECF Nos. 7, 8 & 9.) On June 10, 2016, Plaintiff filed a request for default with the Clerk when Defendants failed to answer or otherwise respond. (ECF No. 19.) On June 22, 2016, Defendants filed their MTD. (ECF No. 21.) Because Plaintiff's request for default was filed prior to Defendants' responsive motion, the Court directed the Clerk to enter an entry of default against Defendants. (ECF No. 22.) In response, Defendants filed their Motion to Set Aside Default, in which, for the first time, they argue that service was improper. Regardless of whether service by the Marshal was proper, by failing to raise that issue in their MTD, Defendants waived that defense. *See* Fed. R. Civ. P. 12(g)(2), (h)(1)(A); *see also McCray v. Unite Here*, No. 13-6540, 2014 WL 2611830, at *1 (D.N.J. June 11, 2014) ("A party waives its right to file a 12(b)(5) motion if it was not raised in a previous Rule 12 motion.") (citing Rule 12(h)(1)).

Here, it appears that "the alleged defect in service of process was more technical than real[.]" *E.B. v. Woodland Hills Sch. Dist.*, No. 10-0442, 2010 WL 2817201, at *2 n.2 (W.D. Pa. July 16, 2010) (quoting *Brennan v. Chadris, Inc.*, No. 89-3174, 1990 WL 27372, at *2 (E.D. Pa. Mar. 13, 1990)). Defendants' counsel, through affidavit, admits that Defendants retained him to represent them in this case on June 6, 2016. (Certification of Counsel, ¶ 2, ECF No. 23-2.) That was before Plaintiff filed his request for default. As such, evidence shows that Defendants had knowledge of the lawsuit prior to the request for default, and in their motion, they do not explain why they did not seek representation earlier. Without more, the Court can only draw the conclusion that they had knowledge of the lawsuit on or shortly after the Marshal's service on August 24, 2015, failed to answer or otherwise respond until June 22, 2016, and provided no good cause for the delay.[1]

---

[1] Defendants did not explain how they had knowledge of the suit if not for the Marshal's service.

4

Nevertheless, the Court finds that default judgment is not warranted. First, Plaintiff would not be prejudiced if default judgment is denied—there is no evidence showing that Plaintiff's claims have been compromised by Defendants' delay through, for example, the alteration or destruction of evidence. *See Glashofer v. N.J. Mfrs. Ins. Co.*, No. 15-3601, 2016 WL 4204549, at *4 (D.N.J. Aug. 9, 2016) ("Factors that contribute to a showing of prejudice to a plaintiff include loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the [default].") (citing *Feliciano*, 691 F.2d at 656-57); *see also Feliciano*, 691 F.2d at 656-57 ("Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening of a default judgment entered at an early stage of the proceeding."). Furthermore, a review of the MTD shows that Defendants have potentially meritorious defenses, some of which the Court addresses below. *See infra*. While Defendants provide no explanation for their delay in responding to the Complaint, on balance, the Court cannot find that default judgment is warranted. Indeed, Plaintiff himself did not request an entry of default until a mere twelve days before Defendants' responsive motion, even though he had several months to do so. Accordingly, the Court grants Defendants' Motion to Set Aside Default, and denies Plaintiff's Motion for Default Judgment.

**B.   Motion to Dismiss**

A plaintiff can pursue a cause of action under § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, to state a claim for relief under § 1983, a plaintiff must establish, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-1 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013).

### 1. Affirmative Defenses

Before the Court addresses the merits of Plaintiff's claims, the Court first addresses two affirmative defenses raised by Defendants: (1) Plaintiff failed to exhaust administrative remedies, and (2) Defendants have absolute immunity under the Eleventh Amendment. Regarding Defendants' failure to exhaust defense, federal law requires Plaintiff, as a prisoner, to exhaust administrative remedies prior to asserting his § 1983 claims. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."). But "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, Plaintiff's neglect to plead exhaustion is not a basis to dismiss his claim on exhaustion grounds. Instead, as the Supreme Court held, failure to exhaust is an *affirmative defense*, and on a motion to dismiss, Defendants bear the burden of showing that no claim has been presented. *Hedges*, 404 F.3d at 750.

Defendants attempt to satisfy their burden of proof by submitting documents and affidavits that are not part of the Complaint. This is evidence the Court cannot consider on a motion to dismiss. *See* Fed. R. Civ. P. 12(d); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

(3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). Accordingly, the Court denies dismissal on this ground without prejudice—Defendants may renew this defense at the appropriate stage of litigation.

The Court next turns to the merits of Defendants' assertion that they are entitled to Eleventh Amendment immunity. Their assertion is based on an erroneous reading of the Complaint—that the Complaint only raises official capacity claims. Indeed, a review of the Complaint shows that Plaintiff does not specify whether he is raising individual or official capacity claims. When a *pro se* plaintiff does not specify whether he is raising individual or official capacity claims, courts should liberally construe the complaint as raising *both* types of claims, to the extent they can be supported by the plaintiff's allegations. *See Hooks v. Schultz*, No. 07-5627, 2009 WL 777394, *7-8 (D.N.J Mar. 19, 2009); *see also Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990) ("In determining whether plaintiffs sued Hafer in her personal capacity, official capacity, or both, we first look to the complaints and the 'course of proceedings.'") (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Here, Plaintiff seeks both injunctive and monetary relief, which is indicative of both official and individual capacity claims.

Even if the Complaint raises only official capacity claims, it does not mean that Defendants are immune under the Eleventh Amendment. First, official capacity immunity only applies to claims of monetary relief, and Plaintiff raises claims for both injunctive and monetary relief. Therefore, insofar as Plaintiff requests injunctive relief, Defendants are not immune from suit under the Eleventh Amendment.

Second, Eleventh Amendment immunity applies only to the State, and Defendants, a county jail and employees of that jail, are not protected under the Eleventh Amendment. *N. Ins. Co. of N.Y. v. Chatham Cty., Ga.*, 547 U.S. 189, 193-94 (2006) ("[The Supreme] Court has

repeatedly refused to extend sovereign immunity to counties."). Although the Court recognizes that it creates confusion when some courts dismiss a county jail as "immune" from suit—due to Eleventh Amendment immunity or otherwise—recent decisions from this district are clear that a county and its employees do not enjoy Eleventh Amendment immunity. *See, e.g., Mazariegos v. Monmouth Cty. Corr. Inst.*, No. 12-5626, 2014 WL 1266659, at *9 n.17 (D.N.J. Mar. 25, 2014) (finding that Monmouth County, the warden, and a correctional officer at the county jail did not enjoy Eleventh Amendment immunity). The Court, therefore, rejects Defendants' assertion that they are entitled to Eleventh Amendment immunity.

Nonetheless, the Court dismisses all claims against Defendant Monmouth County Correctional Institution ("MCCI") because MCCI is not a "person" amendable to suit under § 1983. *Boomer v. Lewis*, 541 F. App'x 186, 192 (3d Cir. 2013) ("PCCF, [a correctional facility,] to the extent Boomer was suing the facility, is not a 'person' within the meaning of 42 U.S.C. § 1983." (first citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); and then citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973))); *Tremper v. Correct Care Sols.*, No. 13-3626, 2014 WL 320338, at *2 (D.N.J. Jan. 29, 2014); *Antoine v. Belleville Mun. Ct.*, No. 10-1212, 2010 WL 2989991, at *3 (D.N.J. July 27, 2010); *McLeod v. Monmouth Cty. Corr. Inst.*, No. 05-4710, 2006 WL 572346, at *4 (D.N.J. Mar. 8, 2006).

### 2. Merits

Defendants construe the Complaint as raising a claim under the First Amendment right to free exercise of religion and a claim under the Equal Protection Clause. The Court agrees with Defendants' construction of the Complaint in this regard. Defendants argue that Plaintiff fails to state a claim upon which relief can be granted on both claims.

Regarding the First Amendment claim, "[t]he Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate 'a reasonable opportunity of pursuing his faith.'" *McCray v. Passaic Cty. Jail*, No. 13-6975, 2013 WL 6199202, at *2 (D.N.J. Nov. 27, 2013) (citing *Cruz v. Beto*, 405 U.S. 319, 322, 322 n.2 (1972)). In order to establish a claim, Plaintiff must raise sufficient allegations to show that Defendants' actions impinged on his constitutional rights and were not reasonably related to legitimate penological interests. *Williams v. Morton*, 343 F.3d 212, 216 (3d Cir. 2003). To make that determination, the Third Circuit relied on the four-factor test established by the Supreme Court in *Turner v. Safley*: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) the absence of ready alternatives. 482 U.S. 78, 89-90 (1983); *see Williams*, 343 F.3d at 217.

In *Williams*, the Third Circuit applied the *Turner* test and addressed the very question that is at issue in this matter: whether the provision of vegetarian meals to Muslim inmates is sufficient to allow such inmates a reasonable opportunity to practice their faith. *See Williams*, 343 F.3d at 219. The Third Circuit held that "providing a vegetarian meal rather than one with meat . . . is reasonable." *Id.* The Third Circuit further held that other opportunities to practice the Muslim faith—such as "a weekly congregational prayer service known as the Jumu'ah, the opportunity to study Arabic and to observe Ramadan by providing a special meal enabling Muslims to comply with the holiday's fasting requirement, the opportunity to pray five times during each day, and the chance to observe the five pillars of the Islam faith"—provided "inmates with alternative avenues through which they can express their religious beliefs." *Id.* Here, as with the inmates in *Williams*,

Plaintiff's allegations demonstrate that there were alternative means of expressing his faith at MCCI. For example, Plaintiff admits that he was able to consult with an Islamic chaplain. (Compl. 6.) Certainly, Plaintiff makes no other allegations in the Complaint that Defendants had failed to accommodate his religious practices other than providing him with only vegetarian meals, which Plaintiff concedes does not violate his religious beliefs. *Id.* at 4. Given the *Williams* holdings, the Court cannot find that Plaintiff's constitutional right was violated by Defendants' provision of only vegetarian meals. As such, the Court grants the MTD on this ground, and Plaintiff's First Amendment claim is dismissed.[2] *See Abdul-Aziz v. Ricci*, 569 F. App'x 62, 66-67 (3d Cir. 2014), *vacated*, 135 S. Ct. 2803 (2015) ("[Plaintiff] has presented evidence establishing only that any meat eaten by Muslims must be Halal, not that Halal meats must be eaten . . . . Therefore his First Amendment rights were not violated, nor were his Fourteenth Amendment rights.").

Regarding the Equal Protection claim, to state a valid claim, Plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips*, 515 F.3d at 243. Defendants argue that Plaintiff has not satisfied this standard because he does not allege that he was similarly situated as Jewish inmates and that there is no allegation of intentional discrimination. The Court disagrees.

First, Defendants argue that "Plaintiff does not assert that the number of Muslim inmates whose religious beliefs require a Halal diet is equivalent to the number of Jewish inmates whose religious beliefs require a Kosher diet." (Defs.' Br. 19, ECF No. 21-1.) Defendants, however,

---

[2] The Court notes that if Plaintiff alleged that there was a policy in place prohibiting all Muslim inmates from receiving Kosher meals, therefore forcing them to choose between forgoing their religious beliefs or becoming (as alleged) "vegetarians," then a plausible claim may arise out of the Religious Land Use and Institutionalized Persons Act. *See Washington v. Klem*, 497 F.3d 272, 277 (3d Cir. 2007). However, Plaintiff does not allege such policy claim here.

10

again misconstrue the Complaint. Plaintiff does not allege that Defendants should have provided him with separate Halal meals, which would have required MCCI to create a new set of meals for a different group of inmates. Instead, Plaintiff alleges that he informed Defendants he was willing to accept the Kosher meals MCCI was *already* providing Jewish inmates, and such meals would be sufficient to satisfy his religious needs. The Court fails to see how this made him any different from the Jewish inmates.[3] As for Defendants' contention that there was no intentional discrimination, Plaintiff alleges that both Defendants Barry Nadrowski and Lt. Villacoba denied numerous requests from him to receive Kosher meals, "even though Kosher/Halal food is basically the same and Jewish inmates can be vegetarians but are not forced to." (Compl. 4.) It is unclear to the Court how these Defendants could have "unintentionally" denied Plaintiff's requests.[4]

As to the third element of Plaintiff's claim—given his allegations that Jewish inmates were provided Kosher meals and were not forced to become vegetarians, that he was denied Kosher meals MCCI was *already* providing, and that he was told to eat "whatever is served or become vegetarian[]," *id.* at 6—the Court cannot envision a rational basis for Defendants' denials.

---

[3] Defendants submit evidence showing that Plaintiff may have rejected Kosher meals at one point, thus contradicting Plaintiff's allegations. The Court, however, cannot consider such evidence on a motion to dismiss. *See supra*. Further, additional evidence could show that Plaintiff may have initially rejected Kosher meals, subsequently consented to such meals as acceptable, but was nevertheless denied them anyway.

[4] Defendants also argue that they cannot be held liable because they had no personal involvement, and cite to cases stating that mere participation in the prison grievance process does not constitute personal involvement. (*See* Defs.' Br. 16.) The Court recognizes that in Eighth Amendment claims, which require a prison official to have acted with a culpable state of mind amounting to deliberate indifference, mere participation in the grievance process, without more, is insufficient to state a claim. *See Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015). Equal Protection claims, however, do not require deliberate indifference; they merely require intentional conduct.

11

Therefore, construing the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently pled an Equal Protection claim.[5]

Finally, Defendants argue that they are entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). To determine whether a defendant is entitled to qualified immunity, the Court must decide: (1) "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor*, 135 S. Ct. at 2044 (quoting *Reichle*, 132 S. Ct. at 2098). For a right to be clearly established, however, the doctrine does not "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 568 U.S. 731, 741 (2011)). Defendants bear the burden of establishing qualified immunity. *Thomas v. Indep. Twp.*, 463 F.3d 285, 293 (3d Cir. 2006).

Here, the Court already found that Plaintiff sufficiently pled a plausible Equal Protection violation. Concerning whether the right asserted is clearly established, as the Court stated above, Plaintiff does not claim that Muslims are entitled to non-vegetarian Halal meals that are not being

---

[5] The Court recognizes that at least one other court in this district held differently with regard to an Equal Protection claim with substantially similar facts. *See McCray*, 2013 WL 6199202, at *1, 4. That decision, however, is not binding precedent on the Court, and the Court respectfully disagrees with *McCray*'s analysis.

12

offered to Jewish inmates. *See Williams*, 343 F.3d 221-22. Nor is he even asserting that because Jewish inmates were provided Kosher meals, Equal Protection mandates that Muslim inmates receive separate and distinct Halal meals. Instead, Plaintiff simply requested that he be given Kosher meals that were *already* being provided to other inmates—a demand that seemingly would place very little, if any, burden on Defendants. Given that MCCI was already providing religious meals to one set of inmates based on their Jewish faith, it is unreasonable that an officer would believe it was constitutionally permissible to deny another set of inmates, i.e., Muslims, those *same* meals when they had allegedly identical religious needs. As the Court stated above, there does not appear to be any rational basis for Defendants' actions based on Plaintiff's allegations. At this stage of the litigation, the Court rejects Defendants' qualified immunity defense. Accordingly Defendants' MTD on the Equal Protection claim is denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Set Aside Default is GRANTED, and Plaintiff's Motion for Default Judgment is DENIED. The MTD is GRANTED IN PART, and DENIED IN PART. All claims against Defendant MCCI are DISMISSED WITH PREJUDICE, and all First Amendment claims are DISMISSED WITH PREJUDICE.[6]

Michael A. Shipp
**United States District Judge**

Dated: 12/22/16

---

[6] To the extent Plaintiff wishes to amend the Complaint, he should follow the proper procedures to do so. *See* Fed. R. Civ. P. 15(a); L.Civ.R. 7.1(f).

13