**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TODD STATHUM, SR.,

          Plaintiff,

v.

BARRY NADROWSKI, et al.,

          Defendants.

Civil Action No. 15-5502 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment ("Motion") of Warden Barry Nadrowski ("Warden Nadrowski") and Lieutenant Vilacoba[1] ("Lieutenant Vilacoba" or "Vilacoba") (collectively, "Defendants"). (Mot., ECF No. 73.) *Pro se* Plaintiff Todd Stathum, Sr. ("Plaintiff") opposed the Motion. (Pl.'s Resp. to Mot., ECF No. 81.) For the reasons set forth below, Defendants' Motion is granted in part and denied without prejudice in part.

**I.    BACKGROUND**

On or about July 13, 2015, Plaintiff filed a Complaint alleging violations under the First Amendment and Equal Protection Clause. (Compl., ECF No. 1.) At the time Plaintiff submitted his Complaint, he was incarcerated at Monmouth County Correctional Institution ("MCCI"). (*Id.* at 3.) The Complaint alleged that Plaintiff is Muslim, and he was denied Halal meals as required by his religious beliefs. (*Id.* at 6.) The Complaint further alleged that Jewish inmates

---

[1] Lieutenant Vilacoba was improperly pled as Lieutenant Villacoba. The Court uses the correct spelling herein.

receive Kosher meals, but when Plaintiff requested Kosher meals—which would have substantially complied with Plaintiff's religious practices—the request was denied. (*Id.*) Plaintiff was told that Muslim inmates must eat "whatever is served or become vegetarians," whereas Jewish inmates were not forced to become vegetarians. (*Id.*) The Court permitted the Complaint to proceed. (July 22, 2015 Order, ECF No. 3.) Defendants MCCI, Warden Nadrowski and Lieutenant Vilacoba filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 21.) The Court denied the Motion on Plaintiff's claim arising under the Equal Protection Clause but granted the Motion on Plaintiff's First Amendment claim and all claims as to MCCI. (Dec. 22, 2016 Order, ECF No. 33.) Subsequently, Plaintiff was moved to East Jersey State Prison. (Letter Order, ECF No. 38.) Following discovery, Defendants filed the instant motion on the remaining equal protection claim. (Mot., ECF No. 73.) Plaintiff filed a Response (Pl.'s Resp. to Mot., ECF No. 81), and Defendants filed a Reply Brief (Reply Br., ECF No. 88). The Court separately ordered Defendants to submit complete deposition transcripts (Mar. 13, 2019 Order, ECF No. 83), which Defendants provided (ECF No. 86).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 422-23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact

exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## III. DISCUSSION

Defendants contend that summary judgment must be granted in their favor because they are not liable in their official or individual capacities and because Plaintiff fails to establish a violation of his equal protection rights. (Br. in Supp. of Mot., ECF No. 73-1.) Defendants also argue that Plaintiff failed to exhaust his administrative remedies, and they are entitled to qualified immunity. (Reply Br.)

### A. Official Capacity Claims

Defendants first contend that the claims for damages against them in their official capacities must be dismissed. It is well established that "[s]tate officers sued for damages in their official capacity are not 'persons'" under 42 U.S.C. § 1983 ("Section 1983"). *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Court, accordingly, grants Defendants' Motion as to Plaintiff's Section 1983 claims for *damages* against Defendants in their *official capacities*.

### B. Remaining Claims

The Court declines to reach Defendants' arguments that Plaintiff failed to exhaust administrative remedies and that Defendants are entitled to qualified immunity because Defendants raised these arguments for the first time in their Reply Brief. *See Werner v. Werner*, 267 F.3d 288, 302 (3d Cir. 2001) (Nygaard, J., dissenting in part) ("A reply brief is like rebuttal—an opportunity for the appellant to 'reply' to arguments of the appellee, not to raise a new issue at a time when the appellee cannot respond."); *See also D'Alessandro v. Bugler*

3

*Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (citing *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992)) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief.")

The Court also finds good cause to deny the remainder of Defendants' motion pending the appointment of pro bono counsel. Defendants' Statement of Facts ("SOF") in support of their Motion provides, in relevant part:

> 11. The Chaplain Office is comprised of a Chaplain, Rab[b]i, Imam, and representatives from various other religious groups. (*See* Affidavit Lt. Iannello, pg. 4, ¶ 19.)
>
> 12. All religious diet requests are reviewed and must be authorized by the Chaplain Office. (*See* Deposition of Lt. Vilacoba P.127:22-128:11.)
>
> 13. Imam Alvi is an expert in the religion of Islam. (*See* Deposition of Imam Alvi P. 7:10-14.)
>
> 14. Whenever a request for Muslim meals is made, the determination is made by [Imam Fakhruddin Alvi ("Imam Alvi")]. (*See* Deposition of Lt. Vilacoba P. 128:9-11.)
>
> 17. Defendant Richard Vilacoba relies on the expertise of the Chaplain Office (the Chaplain, Rab[b]i, and Imam) to determine whether a religious diet request is authorized. (*See* Deposition of Lt. Vilacoba P. 129:1-5.)
>
> 18. All inmates at MCCI are offered Muslim, Kosher and/or vegetarian diets as an alternative to MCCI's regular menu and have been reviewed and approved by MCCI's Imam as being compliant with the Islamic faith. (*See* Certification of William Kelvin Jones, at pg. 3, ¶ 9.)

(Defs.' SOF ¶¶ 11-14, 18, ECF No. 73-3) (internal punctuation edited for consistency).

Reviewing Defendants' SOF, Imam Alvi's role in the Halal determination is relevant to Plaintiff's and Defendants' arguments in this matter. The deposition transcript of Imam Alvi reflects the following colloquy:

4

| | |
|---|---|
| MR. TESTA: | Madam Transcriber, we're back on the record now, are you having difficulty transcribing because of a language barrier with the witness? |
| [CT. REPORTER]: | Yes. |
| MR. TESTA: | Okay. At this point in time I think it would be best that we reconvene at a later date to have an Interpreter provide assistance for the witness so that the Transcriber can have a clear transcript of the record. |
| MR. YU: | I disagree. I've been deposing him for the last, I think, half hour. But since you're, or an hour, but since the Transcriber is having a problem, then we can certainly reconvene if we have to. |
| MR. TESTA: | I'm not okay with having an unclear transcript . . . . I'm sorry but the Transcriber is the most important person in the room. |
| MR. YU: | I don't disagree with. |
| MR. TESTA: | If we don't have a clear transcript, we are wasting all of our time today. |
| MR. YU: | My question to you, Ms. Transcriber, was whether you're having a hard time? |
| [CT. REPORTER]: | Some words I'm having a very difficult time. |
| MR. YU: | Okay. |

(Imam Alvi Dep. 35:16-36:18, ECF No. 86-1.) The deposition transcript reflects that Imam Alvi's deposition commenced at 10:20 a.m., adjourned at 11:00 a.m., and included two notations of "off the record." (*Id.* at 2:6, 14:12, 35:14-15, 36:20.) Imam Alvi's deposition did not resume. In his Motion to Compel Discovery, Plaintiff argued that:

> Imam Alvi and [D]efendant Vilacoba both made contradictory statements during [their] deposition[s]. And in fairness the deposition of Imam Alvi was stopped because his comprehension was being questioned by the [D]efendants and they asked for a translator. Thus P[l]aintiff respectfully asks for these transcripts or that they be eliminated in their entirety until there is a translator available and the content is no longer an issue.

5

(Mot. to Compel 2, ECF No. 82.) The Court subsequently ordered Defendants to provide complete deposition transcripts. (Mar. 13, 2019 Order.) The Court has reviewed the deposition transcripts of Plaintiff, Imam Alvi, and Lieutenant Vilacoba and finds that the simple provision of Imam Alvi's "complete" deposition transcript to Plaintiff does not rectify Defendants' failure to provide Plaintiff the opportunity to cross examine Imam Alvi.

It is axiomatic that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Moreover, the Third Circuit has recognized that "the right of cross-examination inheres in every adversary proceeding and that it is established beyond any necessity for citation of authorities . . . that if cross-examination of an available witness is not had[,] the litigant, deprived of cross-examination, has been denied due process of law." *Derewecki v. Pa. R.R. Co.*, 353 F.2d 436, 442 (3d Cir. 1965).

Here, Defendants' arguments are largely based on the role of Imam Alvi in the approval process for religious meals, yet Plaintiff was not afforded the opportunity to cross-examine Imam Alvi. Based on the parties' arguments and the current record, the Court finds good cause to deny Defendants' Motion. The Court will afford Defendants the opportunity to file a renewed motion for summary judgment at an appropriate juncture in this matter.

### C. Appointment of Pro Bono Counsel

Plaintiff filed previous requests for pro bono counsel, which the Court denied. (Oct. 7, 2015 Order, ECF No. 11; May 20, 2016 Order, ECF No. 18.) In both Orders, the Court found that "[t]he appointment of counsel is not warranted at this juncture." (Oct. 7, 2015 Order 3; May 20, 2016 Order 3.) A court must consider a number of factors in determining whether pro bono counsel should be appointed, including the applicant's ability to present his case, the degree to

6

which factual investigation is required and the ability of the applicant to pursue such investigation, and whether the case will require testimony from expert witnesses.[2] *Tabron v. Grace*, 6 F.3d 147, 155-56 (3d Cir. 1993). A consideration of the *Tabron* factors in light of the deposition transcripts demonstrates that the appointment of pro bono counsel is appropriate at this juncture. Lieutenant Vilacoba's testimony reflected that he relied upon Imam Alvi with respect to Halal determinations because Imam Alvi was the expert. Namely, Vilacoba testified, "I refer to Imam Alvi if . . . I have any questions about the religious components of any problems we have here because I'm not an expert in any way. And Inmate Stathum didn't agree with the answers that I was getting from Imam Alvi." (Vilacoba Dep. 65:7-12, ECF No. 86-3.) In another colloquy, Vilacoba testified:

> Q: Did Plaintiff ever request Kosher meals at the jail at MCCI?
>
> A: Yes.
>
> Q: Were they denied?
>
> A: Yes.
>
> Q: Did you ever deny them?
>
> A: I denied them as directed by the Chaplain, yes.
>
> Q: Did Plaintiff request Halal meals at the jail during this time, 2014/2016?
>
> A: Yes.
>
> Q: Did you ever respond to those requests?
>
> A: Yes.
>
> Q: Were they denials or approvals?

---

[2] The Honorable Tonianne J. Bongiovanni, U.S.M.J., set forth all of the *Tabron* factors in her earlier opinions and the Court adopts that standard for the purposes of this Memorandum Opinion.

A: Whatever the Imam said Halal meals were.

Q: Were they denials?

A: For Halal meals?

Q: Yes.

A: Whatever the definition of Halal meal is described by the Imam. I don't know. I'm not an expert in that regard.

Q: Were Plaintiff's requests for Halal meals ever approved?

A: I don't recall.

Q: You don't recall if they were approved?

A: When he was asking for Halal meals?

Q: Yes.

A: I don't know what Halal is. If the Imam said yes, then I said yes. If the Imam said no, then I told them no.

Q: Do you recall the Imam ever saying yes --

A: I believe so, yes.

Q: -- that he was approved for Halal meals at the jail?

A: Depending on what the definition of Halal was, okay. If there's food here that was Halal according to the Imam, and that's what he had, and that's what he was getting, then you can say, yes, he got the meals. I don't interpret what Halal means.

(Vilacoba Dep. 71:14-73:6.)

During Vilacoba's deposition, his counsel also objected to certain lines of questioning as calling for expert testimony. For example:

Q: Do you know if the jail here serves Halal meals? Does the jail serve Halal meals to the inmates?

A: Yes.

8

Q: Is that to the general population, or to certain individuals that are approved?

A: Individuals that are approved.

Q: And your testimony, sir, is that Mr. Stathum was approved for Halal meals?

A: Yes.

Q: And that request was forwarded to GD Correctional?

A: Yes.

Q: Is a Halal meal different from the meals served to the general population?

MR. TESTA: Objection to the form of the question. The witness has already testified that he's not a religious expert.

MR. STATHUM: Excuse me. I didn't hear the objection. I'm sorry.

[*Court Reporter then reads back question and objection*]

"QUESTION: Is a Halal meal different from the meals served to the general population?"

"MR. TESTA: Objection to the form of the question. The witness has already testified that he's not a religious expert."

Q: You can answer.

A: I don't know.

Q: Factually, are they different items of food that are served, or are they the same pieces of food that are served to the general population?

A: I don't know. I refer all those distinctions to the Imam.

Q: To the Imam, okay.

(*Id.* at 77:4-78:11.) In addition:

Q: You stated that Muslim meals are served at MCCI?

A: Yes.

9

Q: Whom are they given to?

A: Inmates.

Q: All inmates?

A: Muslim inmates.

Q: Okay. So can you differentiate between a Muslim meal and the standard regular meal that's given to inmates?

MR. TESTA: Objection to the form of the question. Calls for an expert response. He's not a religious expert. But if you can answer it, go ahead.

A: No.

Q: Well, let me rephrase the question. On the menu, is there a difference between what is considered or served as a Muslim meal and what is served as a regular diet?

A: I do not know.[3]

(*Id.* at 155:13-156:7.)

During the deposition, counsel for Lieutenant Vilacoba objected to certain questions because they call for expert testimony. Lieutenant Vilacoba, nevertheless, testified that he relied on Imam Alvi with respect to Halal meals. As discussed earlier, Plaintiff, however, was never

---

[3] With respect to this line of questioning, one of Defendants' interrogatory responses also appears to implicate whether the Muslim inmate population received the same meals as the other inmates. Defendants, in their previous role as Third-Party Plaintiffs, responded as follows to Third-Party Defendant's interrogatory number 22:

> In early January 2017, I arranged for an informal meeting with a representative from MCCI's food service vendor, GD Correctional. The GD Correctional representative, Joe LaGravanis, Assistant Food Service Manager advised that aside from Jewish inmates who request and receive kosher meals, all inmates receive the same food items. According to Mr. LaGravanis, the Muslim inmate population receives the same meals as all other inmates, and the only difference is the tray color that the meals are served on.

(Answers to Interrog. ¶ 22, ECF 86-3.)

10

afforded the opportunity to cross examine Imam Alvi. Here, the Court finds it appropriate to appoint pro bono counsel. After pro bono counsel has been appointed and has had the opportunity to review the docket in the matter, the parties shall meet and confer and submit a joint proposed scheduling order.[4]

## IV. CONCLUSION

Based on the foregoing, and other good cause shown, the Court grants Defendants' Motion on Plaintiff's Section 1983 claims for *damages* against Defendants in their *official capacities*. The Court denies Defendants' Motion as to the remaining claims. The Court will issue an appropriate order.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: July 31, 2019

---

[4] Due to the amount of time it takes to secure pro bono counsel, the Court will stay and administratively terminate this matter pending the appointment of pro bono counsel. The Court will reopen the case upon the appointment of pro bono counsel.